IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-796

Filed 15 July 2026

Iredell County, No. 25CVD000373-480

ZAYDEN ZUBCHEVICH, Plaintiff,

v.

GUY ZUBCHEVICH, Defendant.

Appeal by Defendant from Order entered 10 February 2025 by Judge Courtney S. Marlowe in Iredell County District Court. Heard in the Court of Appeals 26 February 2026.

*Wesley E. Starnes, P.C., by Wesley E. Starnes, for Defendant-Appellant.*

*Clodfelter Law, PLLC, by Christina E. Clodfelter, for Plaintiff-Appellee.*

HAMPSON, Judge.

**Factual and Procedural Background**

Guy Zubchevich (Defendant-Father) appeals from a Domestic Violence Protective Order (DVPO) entered against him in favor of his son (Minor Plaintiff). The Record before us tends to reflect the following:

Defendant-Father and Maryeve Zubchevich (Mother) married in 2013 and separated in May 2022. They are the biological parents of two minor children: Minor Plaintiff, born in 2017, and a daughter (Daughter), born in 2015. In February 2024, Mother and Defendant-Father agreed to joint custody of the minor children pursuant to a consent order.

On 3 February 2025, Mother filed a "Complaint and Motion for [a] Domestic Violence Protective Order" against Defendant-Father on behalf of Minor Plaintiff. The trial court issued an ex parte DVPO the same day and scheduled a return hearing for 10 February 2025. Mother was also appointed Minor Plaintiff's Guardian ad litem.

At the return hearing, the trial court heard testimony about the alleged domestic violence from Minor Plaintiff, Daughter, and Defendant-Father. According to all three witnesses, on the morning of 27 January 2025, Defendant-Father was preparing to drive Minor Plaintiff and Daughter[1] to school in his truck, which was parked in his driveway. Per both minor children, in the driveway, they argued about where to sit in the truck; ultimately, Daughter sat in the back seat on the driver's side. Daughter testified Minor Plaintiff's car seat, in which he had to sit, was in the back seat on the opposite side; however, Minor Plaintiff still wanted to sit on the driver's side and thus continued to stand on that side.

Minor Plaintiff testified that after telling him a single time to get in his car seat, Defendant-Father grabbed him by the neck and hip, carried him around the truck, put him in his car seat, and fastened his seatbelt. Minor Plaintiff testified he cried during this experience. When asked how he felt at the time, he testified, "[w]eird. I was dizzy and I couldn't breathe."

Daughter testified that from her vantage point in the driver's side back seat,

---

[1] At the time, Minor Plaintiff was seven years old and Daughter was nine.

she saw Defendant-Father tell Minor Plaintiff to "[g]o get into his car seat, but he just kept standing there." Per Daughter, Defendant-Father then "pick[ed] [Minor Plaintiff] up and [brought] him around to . . . get inside" the truck. Her brother's face was "red." Daughter was "worried" about him. He was "just crying" and "breathing hard." Daughter further testified Minor Plaintiff continued "breathing hard" until they arrived at school.

Officer Lindenberger,[2] a Mooresville Police Department patrol officer, testified about interviews with both minor children he conducted on 5 February 2025 with Mother's permission. Recounting his interview with Minor Plaintiff, Officer Lindenberger stated:

> [Officer Lindenberger]: I asked [Minor Plaintiff], you know, can you tell me what happened? To which he responded that his dad had put his hands around his neck because he was angry with him over not being on the right side of the car where his car seat is normally at. . . . And [Minor Plaintiff] said that he was pretty much standing on the wrong side of the car. . . . And they were in a driveway getting ready to go to school. And [Defendant-Father] came around, grabbed him by the neck, and then by the hip, picked him up, lifting him up off of his feet onto the tippy toes, walked him around across the front side of the car and put him on the right side[.]

Officer Lindenberger further testified Daughter told him Defendant-Father had "grabbed" Minor Plaintiff "on the hip and then the neck[,]" and Minor Plaintiff had been "really upset."

---

[2] Officer Lindenberger's first name does not appear in the hearing Transcript or the Record on Appeal.

At closing, after arguing the minor children had given conflicting testimony about the incident, counsel for Defendant-Father stated:

> [Defense Counsel]: And so, [the minor children's testimony] is very inconsistent. But a parent has a right to put their child where they want them to be. If I tell my child to sit in that chair and they're not doing it. I've got a right to pick them up and put them there.

On 10 February 2025,[3] the trial court entered a written DVPO in which it made two Findings of Fact:

> 3. On . . . 1-27-2025, the defendant . . . intentionally caused bodily injury to the [Minor] [P]laintiff. . . . by . . . grabb[ing] the [M]inor [P]laintiff by his hip and neck and carr[ying] him to the other side of the vehicle. The Defendant caused the [M]inor [P]laintiff to turn red[.]
>
> . . . .
>
> 8. The Court saw the [M]inor [P]laintiff cry as he told The Court what happened to him on January 27, 2025.

Upon these Findings, the trial court made a Conclusion of Law:

> 1. The defendant has committed acts of domestic violence against the [M]inor [P]laintiff.

The trial court indicated "the terms of this [DVPO] shall be effective until February 10, 2026."[4]

---

[3] On the same day, the trial court also entered a temporary custody order providing full custody of the minor children to Mother and supervised visitation to Defendant-Father. That order is not before us.

[4] Although the DVPO expired on 10 February 2026, the appeal is not moot. *See Eagle v. Johnson*, 159 N.C. App. 701, 703, 583 S.E.2d 346, 347 (2003) ("As a preliminary matter, we note that

4

On 21 February 2025, Defendant-Father timely provided written Notice of Appeal from the DVPO.

**Issues**

The issues on appeal are whether: (I) the trial court's Findings of Fact supported its Conclusion of Law Defendant-Father committed domestic violence; (II) Defendant-Father's constitutional arguments are preserved for appellate review; and (III) Minor Plaintiff had standing to seek a DVPO against Defendant-Father.

**Analysis**

I. Domestic Violence

"This Court reviews a trial court's order issuing a DVPO to determine 'whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' " *Williams v. Cabrera*, 298 N.C. App. 611, 614, 916 S.E.2d 281, 286 (2025) (quoting *Kennedy v. Morgan*, 221 N.C. App. 219, 220-21, 726 S.E.2d 193, 195 (2012)). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *City of Asheville v. Aly*, 233 N.C. App. 620, 625, 757 S.E.2d 494, 499 (2014) (citation and quotation marks omitted). "Findings of fact supported by competent evidence are conclusive on appeal even if there is evidence to the contrary. This is because where different

the [DVPO] has now, under its terms, expired. Because, however, this [DVPO] could have collateral legal and non-legal consequences [for the defendant]—including the stigma of a judicial determination of domestic violence—this appeal is not moot." (citing *Smith v. Smith*, 145 N.C. App. 434, 437, 549 S.E.2d 912, 914 (2001)); *Rudder v. Rudder*, 234 N.C. App. 173, 177, 759 S.E.2d 321, 325 (2014) (same).

reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial court." *Shomette o/b/o T.N. v. Needham*, 298 N.C. App. 400, 404, 915 S.E.2d 39, 43 (2025) (citation and quotation marks omitted). "Whether an act of domestic violence occurred is a conclusion of law, and this Court reviews conclusions of law *de novo*[.]" *Id.* at 404-05, 915 S.E.2d at 43 (citations omitted).

"Domestic violence" is defined under our General Statutes as:

(a) . . . the commission of one or more of the following acts upon an aggrieved party . . . by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:

(1) Attempting to cause bodily injury, or intentionally causing bodily injury; or

(2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or

(3) Committing any act defined in G.S. 14-27.21 through G.S. 14-27.33.

N.C. Gen. Stat. § 50B-1(a) (2025). The trial court must grant a DVPO if it concludes an act of domestic violence has occurred. *See id.* § 50B-3(a) (2025) ("If the [trial] court . . . finds that an act of domestic violence has occurred, [it] *shall* grant a [DVPO] restraining the defendant from further acts of domestic violence." (emphasis added)).

Defendant-Father challenges[5] Finding of Fact 3, in which the trial court found Defendant-Father "intentionally caused bodily injury to" Minor Plaintiff when he "grabbed" Minor Plaintiff "by his hip and neck and carried him to the other side of the vehicle. [Defendant-Father] caused the [M]inor [P]laintiff to turn red[.]" Defendant-Father contends competent evidence does not support finding he "intentionally caused bodily injury" within the meaning of N.C. Gen. Stat. § 50B-1(a)(1). Thus, Defendant-Father argues the Conclusion of Law he committed domestic violence is not based on adequate factual findings. Therefore, he asks us to "reverse" the DVPO and "remand this matter for dismissal of [Minor] [P]laintiff's claim for a [DVPO]."

As an initial matter, we address aspects of Defendant-Father's argument based on proffered interpretations of two terms in subsection (a)(1): "intentionally" and "bodily injury[.]" *See* N.C. Gen. Stat. § 50B-1(a)(1) (2025).

First, Defendant-Father asserts, for the trial court to find he acted "intentionally," there must have been evidence he "desired to cause physical harm or that his actions were substantially certain to cause physical harm." But Defendant-

---

[5] The heading for Issue I in Defendant-Father's brief states, in pertinent part, "the trial court erred in that the admissible evidence does not support Findings of Fact Numbers 3 and 8[.]" (capitalization altered). However, Defendant-Father does not state the grounds for his challenge to Finding 8. Therefore, the challenge to Finding 8 is abandoned. *See* N.C. R. App. P. 28(b)(6) (2026) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."); *State v. Hagin*, 203 N.C. App. 561, 564, 691 S.E.2d 429, 431-32 (2010) (defendant's challenge to findings of fact "deemed abandoned" where he did not argue that the challenged findings were unsupported by competent evidence in his brief).

Father cites no caselaw supporting this interpretation of subsection (a)(1). Nor did our research reveal such a case. Therefore, we dismiss this argument as abandoned. *See* N.C. R. App. P. 28(b)(6) (2026); *In re C.D.A.W.,* 175 N.C. App. 680, 688, 625 S.E.2d 139, 144 (2006) (holding an issue was abandoned where it was "void of any discernible argument or citation as authority for such a claim").

Second, noting the General Assembly did not provide a definition of "bodily injury" in subsection (a)(1), Defendant-Father proposes one:

> Black's Law Dictionary . . . defines 'bodily injury' as 'Physical damage to a person's body.' Black's Law Dictionary Seventh Edition p 789. 'Damage,' as used as a noun, as here, is defined as, 'physical harm caused to something in such a way as to impair [its] value, usefulness, or normal function.' New Oxford American Dictionary Third Edition p 436.

Solely citing these dictionary definitions, Defendant-Father argues he did not cause "bodily injury" under subsection (a)(1) because "the evidence does not support a finding of fact that the [M]inor Plaintiff suffered 'physical harm' that 'impaired his normal function.'" This argument is misplaced. Defendant-Father effectively asks us to amend the text of subsection (a)(1) to require an alleged victim of domestic violence to have suffered a particular degree or kind of physical harm for a trial court to conclude a "bodily injury" occurred. But this Court does not revise statutes. *See State v. Heelan*, 263 N.C. App. 275, 281, 823 S.E.2d 106, 111 (2018) ("[I]t is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used." (citation and quotation marks omitted)). Thus, we reject Defendant-

Father's invitation to rewrite subsection (a)(1).

Our analysis is instead guided by three cases in which this Court reviewed a trial court's conclusion a defendant committed domestic violence by "intentionally causing bodily injury" within the meaning of subsection (a)(1).

In *In re A.L.T.*, a mother and father appealed from an order adjudicating their two children neglected juveniles. 241 N.C. App. 443, 445, 774 S.E.2d 316, 317 (2015). In the adjudication order, the trial court found the father had committed domestic violence when he " 'physically struck' " each of his children. *Id.* at 448, 774 S.E.2d at 319. The trial court specifically found the father had " 'popped [one of the children] in the mouth leaving a mark on [it] . . . which included a swollen and busted lip.' " *Id.* We held the trial court "properly characterized [the] [f]ather's actions as domestic violence" upon finding he "intentionally caused bodily injury" to both children "pursuant to [sub]section (a)(1)."[6] *Id.* at 450, 774 S.E.2d at 320.

In *Rollings v. Shelton*, the plaintiff appealed an order granting the defendant's motion to dismiss her complaint for a DVPO for failure to state a claim. 286 N.C. App. 693, 693, 882 S.E.2d 70, 70 (2022). The sole question on appeal was whether the

---

[6] In *A.L.T.*, the mother and father "not[ed] that the term 'domestic violence' is not defined in Chapter 7B[,]" the statute governing the adjudication order from which they appealed. 241 N.C. App. at 449, 774 S.E.2d at 320. Therefore, they asserted the father's actions "d[id] not fit the definition of domestic violence in N.C. Gen. Stat. § 50B-1(a)." *Id.* As requested by the appellants, this Court reviewed the father's actions described as domestic violence in the adjudication order using the definition of "domestic violence" in Section 50B-1(a). *Id.* at 449-50, 774 S.E.2d at 320. Therefore, although *A.L.T.* was not an appeal from a DVPO like the present case, this Court construed the same statute we review here.

complaint "adequately pled [the] [d]efendant committed an act of domestic violence." *Id.* at 698, 882 S.E.2d at 73. Accepting the complaint's allegations as true, we observed the plaintiff's description of an incident where the defendant choked her after an argument "aligns with the plain language of [subsection (a)(1)]" because the alleged acts "involved either 'attempting to cause bodily injury, or intentionally causing bodily injury.' " *Id.* (quoting N.C. Gen. Stat. § 50B-1(a)(1)). Analogizing to *A.L.T.*, we concluded the "choking incident" alleged in the complaint "resembles the [father's] strikes in *A.L.T.* in scope and force." *Id.* (citation omitted). We reversed the order granting the defendant's motion to dismiss and remanded on the ground the complaint pled all elements required for a DVPO, "including an act of domestic violence" under subsection (a)(1) because the plaintiff "pled [the] [d]efendant choked her." *Id.* at 701, 882 S.E.2d at 75.

We recently analyzed a DVPO in *Williams v. Cabrera,* 298 N.C. App. at 616-17, 916 S.E.2d at 287-88. There, the evidence reflected the defendant reversed her car into the plaintiff's body while he stood in a driveway, and the plaintiff "fell to the ground . . . and incurred a minor laceration to his right index finger." *Id.* at 613, 916 S.E.2d at 285. The trial court found the defendant " '[b]umped into [the] [p]laintiff with her car' " and the plaintiff " 'had [an] injury to his finger.' " *Id.* at 617, 916 S.E.2d at 288. After concluding these findings were supported by the evidence and justified the conclusion the defendant committed domestic violence by intentionally causing

bodily injury under subsection (a)(1),[7] this Court held the trial court did not err by granting the DVPO. *Id.* (citation omitted).

In the instant case, Minor Plaintiff testified Defendant-Father picked him up by the neck and hip, carried him around the truck, and buckled him into his car seat. Minor Plaintiff testified he cried, felt "[w]eird" and "dizzy[,]" and "couldn't breathe." Daughter testified her brother's face was "red." Officer Lindenberger testified Minor Plaintiff told him Defendant-Father had: (1) "put his hands around his neck because he was angry with him over not being on the right side" of the truck; and (2) "grabbed him by the neck, and then by the hip, picked him up, lifting him up off of his feet onto the tippy toes, walked him around across the front side of the [truck] and put him on the right side[.]" This testimony is competent evidence in support of Finding 3, wherein the trial court found Defendant-Father "intentionally caused bodily injury" when he "grabbed" Minor Plaintiff "by his hip and neck and carried him to the other side of the vehicle[,]" which "caused [Minor Plaintiff] to turn red[.]" Finding 3 is therefore conclusive and binding on appeal. *See Shomette*, 298 N.C. App. at 404, 915 S.E.2d at 43.

The Conclusion of Law Defendant-Father committed domestic violence is also proper in light of Finding 3. *See Williams*, 298 N.C. App. at 614, 916 S.E.2d at 286.

---

[7] The trial court in *Williams* also found the defendant committed domestic violence under the definition of N.C. Gen. Stat. § 50B-1(a)(2) by "placing [the] [p]laintiff in fear of imminent serious bodily injury." 298 N.C. App. at 613, 916 S.E.2d at 285-86.

There is substantial evidence Defendant-Father intentionally grabbed Minor Plaintiff by the neck resulting in the child's breathing being impaired, causing Minor Plaintiff to feel "weird" and "dizzy[,]" causing his face to turn red, and causing him to cry. Additionally, Minor Plaintiff was "breathing hard" during the entire drive to school. Thus, the evidence was sufficient to establish Defendant-Father "intentionally" caused bodily injury under subsection (a)(1). *Cf. State v. Rodriguez*, 192 N.C. App. 178, 187-88, 664 S.E.2d 654, 660 (2008) ("A defendant's intent is rarely susceptible to proof by direct evidence; rather, it is shown by his actions and the circumstances surrounding his actions." (citation omitted)).

Thus, Finding 3 supports the Conclusion of Law Defendant-Father committed domestic violence by "intentionally causing bodily injury" to Minor Plaintiff under N.C. Gen. Stat. § 50B-1(a)(1). Therefore, the trial court did not err by issuing the DVPO. *See Williams,* 298 N.C. App. at 617, 916 S.E.2d at 288.

II.  Constitutional Arguments

Parents have a "constitutionally-protected paramount right . . . to custody, care, and control of their children." *Petersen v. Rogers*, 337 N.C. 397, 406, 445 S.E.2d 901, 906 (1994). However, constitutional arguments generally must be raised at trial and cannot be made for the first time on appeal. *State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001). In the parental context, our Supreme Court has expressly held "parents must raise the constitutional issue in the trial court to preserve it for appellate review." *In re K.C.*, 386 N.C. 690, 697, 909 S.E.2d 170, 176 (2024) (citing *In*

*re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495, 497-98 (2022)). To preserve the issue, "a parent must inform the trial court and the opposing parties that the parent is asserting a challenge *on constitutional grounds* and articulate the basis for that constitutional claim. If the parent fails to do so, the claim cannot be reviewed on appeal." *Id.* at 691, 909 S.E.2d at 172 (emphasis in original) (citation omitted).

Defendant-Father argues the trial court violated his constitutional right to control his child by concluding his actions constituted domestic violence. Defendant-Father contends this constitutional argument was preserved through the following statement made by his attorney at closing argument: "But a parent has a right to put their child where they want them to be. If I tell my child to sit in that chair and they're not doing it. I've got a right to pick them up and put them there." We disagree. Defense counsel's statement did not inform the trial court or opposing parties Defendant-Father was making a constitutional argument. *See id.* Thus, we cannot consider Defendant-Father's constitutional claim on appeal. *See id.*

III.    <u>Standing</u>

Finally, in the section labeled Issue III in his brief, Defendant-Father raises various arguments best summarized as challenges to Minor Plaintiff's standing to bring an action for a DVPO against him under N.C. Gen. Stat. § 50B.

Generally, minors can be plaintiffs in civil lawsuits provided the trial court appoints a Guardian ad litem. N.C. Gen. Stat. § 1A-1, Rule 17(b) (2025). Here, Mother was appointed Minor Plaintiff's Guardian ad litem on 3 February 2025.

In DVPO actions, a minor may be a plaintiff if the minor: (1) is an aggrieved party, meaning someone with a "personal relationship" with the defendant; and (2) is an alleged victim of domestic violence. *See* N.C. Gen. Stat. § 50B-1(a)-(b) (2025). Here, both requirements are met. First, as his biological child, Minor Plaintiff has a "personal relationship" with Defendant-Father. *See id.* § 50B-1(b)(3) (2025). Second, the Complaint and Motion for a DVPO filed by Mother on behalf of Minor Plaintiff alleged he was a victim of domestic violence committed by Defendant-Father. *See id.* § 50B-1(a) (2025). Therefore, Minor Plaintiff satisfied the statutory requirements to seek a DVPO against Defendant-Father.

Next, Defendant-Father argues "a minor child lacks standing to challenge their parents' constitutionally-protected right to 'control of his or her child,' including by challenging this parental right through a domestic violence action." However, as we have discussed, Defendant-Father did not preserve any constitutional issues for appellate review. *See K.C.*, 386 N.C. at 697, 909 S.E.2d at 176.

Finally, Defendant-Father contends the Complaint for a DVPO filed on behalf of Minor Plaintiff by Mother constituted a "collateral attack" on the custody order then in place between himself and Mother. Under this banner, Defendant-Father deploys an array of normative and policy-based objections to the very existence of a

cause of action permitting minor children to seek a DVPO against their parents.[8]

However, because Defendant-Father raised none of these issues in the trial court, they are unpreserved. *See* N.C. R. App. P. 10(a)(1) (2026) (requiring a party's "timely request, objection, or motion" regarding an issue at trial to preserve it for appellate review).

Thus, Minor Plaintiff had standing under our statutes because a Guardian ad litem was appointed to represent him, *see* N.C. Gen. Stat. § 1A-1, Rule 17(b) (2025), and he satisfied the requirements to be a plaintiff in a DVPO action, *see* N.C. Gen. Stat. § 50B-1 (2025). Therefore, as the remaining issues are unpreserved, we reject all of Defendant-Father's arguments related to standing.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the DVPO.


AFFIRMED.

Judge MURRY concurs. Judge WOOD dissents by separate opinion.

---

[8] For instance, Defendant-Father argues that by authorizing minors to be DVPO plaintiffs in N.C. Gen. Stat. § 50B, "[i]t was not the intention of the legislature to open . . . a Pandora's Box of civil litigation by a child against their parent." However, it is the legislature's role to consider whether and how to address alleged unintended consequences of its statutes. *See Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004) ("The General Assembly is the 'policy-making agency' because it is a far more appropriate forum than the courts for implementing policy-based changes to our laws.").

WOOD, Judge, dissenting.

I respectfully dissent from the majority opinion affirming the trial court's order granting Plaintiff's Domestic Violence Protective Order ("DVPO"). While I do not disagree with any of the majority's facts, I believe it is necessary to make some clarifications. Defendant-Father and Mother were separated and had joint custody of the children through a consent order. On 3 February 2025, the same day Mother filed the Complaint and Motion for a DVPO for her seven-year-old son, she also filed a Motion to Modify Custody containing the same allegations in her complaint for a DVPO, which matched those in the police report she also filed, to support requesting both temporary and permanent sole legal and physical custody of both the seven-year-old son at issue as well as the nine-year-old daughter. This was highly effective weaponization of the legal systems to facilitate a change in custody with little evidence to support such a change. We now consider the trial court's order.

The majority correctly cites the standard of review for a DVPO as, "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Williams v. Cabrera*, 298 N.C. App. 611, 614, 916 S.E.2d 281, 286 (2025) (quoting *Kennedy v. Morgan*, 221 N.C. App. 219, 220-21, 726 S.E.2d 193, 195 (2012)). Additionally, they correctly recognized "[c]ompetent evidence is evidence that a reasonable mind might accept as adequate

to support the finding." *City of Asheville v. Aly*, 233 N.C. App. 620, 625, 757 S.E.2d 494, 499 (2014) (citation and quotation marks omitted). However, I adamantly disagree that a "reasonable mind" would accept that a father picking up a tantruming seven-year-old child and placing him in his car seat to be safely transported to school without leaving a single mark on the child is competent evidence of "intentionally causing bodily injury" thus supporting a conclusion of domestic violence.

"Domestic violence" is defined in pertinent part as:

> (a) . . . the commission of one or more of the following acts upon an aggrieved party . . . by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
>
> > (1) Attempting to cause bodily injury, or intentionally causing bodily injury. . .

N.C. Gen. Stat. § 50B-1(a). To support its conclusion of domestic violence, the trial court made the following finding "the defendant intentionally caused bodily injury to the plaintiff [when] Defendant grabbed the minor plaintiff by his hip and neck and carried him to the other side of the vehicle. The Defendant caused the minor plaintiff to turn red." Defendant-Father contends, and I agree, picking up a child and the child's face becoming red does not reach the level of "intentionally causing bodily injury," the necessary finding to support the conclusion of domestic violence.

Both Defendant-Father and the majority recognize that our General Assembly did not provide a definition of "bodily injury" within N.C. Gen. Stat. § 50B-1(a).

- 2 -

Defendant-Father attempts to define the term by utilizing Black's Law Dictionary, a practice both this Court and our Supreme Court rely upon regularly. *See Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 207, 913 S.E.2d 174, 194 (2025), *Wing v. Goldman Sachs Tr. Co., N.A.,* 382 N.C. 288, 306, 876 S.E.2d 390, 403 (2022), *US Right to Know v. Univ. of North Carolina at Chapel Hill*, __ N.C. App. __, __, 925 S.E.2d 807, 814 (2026), *Legal Impact for Chickens v. Case Farms, L.L.C.*, 299 N.C. App. 43, 49, 917 S.E.2d 458, 464, *rev. denied*, 923 S.E.2d 234 (N.C. 2025). However, the majority asserts Defendant-Father's attempts are "misplaced" and would require "us to amend the text of subsection (a)(1)," erroneously implying that by giving meaning to the legislature's words we would have to add or delete from the statute. Rather, our Supreme Court has clearly instructed "[w]e presume that when the legislature enacts a statute, it intentionally includes and gives meaning to *every word* therein." *Happel*, 387 N.C. at 207, 913 S.E.2d at 192 (emphasis added). "When interpreting the plain language of a statute, undefined words must be given their common and ordinary meaning. Absent precedent, we look to dictionaries to discern a word's common meaning." *Legal Impact for Chickens,* 299 N.C. App. at 49, 917 S.E.2d 458 at 463–64 (cleaned up).

Black's Law Dictionary defines "bodily injury" as "[p]hysical damage to a person's body." *Injury*, Black's Law Dictionary (12th ed. 2024). The majority contends that we would have to determine "a particular degree or kind of physical harm for a trial court to conclude a 'bodily injury' occurred." This is unnecessary.

The trial court's order fails to include *any* physical damage to Minor Plaintiff. This is because the underlying evidence demonstrates no physical damage occurred.

Both children testified that Defendant-Father picked his son up by his "neck and hip." Although never clearly explained in the hearing, it is reasonable to presume based on the testimony of the responding police officer and the children, Defendant-Father grabbed the son's collar at his neck and his pants at his hip while walking him around the vehicle "on his tip toes" before picking him up and placing him in his car seat. When asked how hard he was grabbed at the neck the son stated, "like, not that hard, but I couldn't leave." Testimony from the medical provider and responding police officer as well as medical records, including x-rays, all demonstrate that the Minor Plaintiff had no injuries, not even a red mark or bruise.

At the hearing, Minor Plaintiff's nine-year-old sister testified that Minor Plaintiff wanted to sit in her seat and not his car seat. When Minor Plaintiff repeatedly refused to get out of her seat, she eventually moved him out of the seat herself. He then stood by the truck and continuously refused to get into his own seat, even when prompted by Defendant-Father multiple times. Defendant-Father walked around the car and picked up Minor Plaintiff by his hip and neck. Minor Plaintiff began "crying and, like, breathing hard" and his face became "[j]ust like a little" bit red. Defendant-Father strapped Minor Plaintiff into his car seat and drove him safely to school. On the way to school, Defendant-Father talked with Minor Plaintiff about needing to be more obedient and the importance of not being late for school.

As there is no evidence of any physical damage or "bodily injury" the finding that Defendant-Father "intentionally caus[ed] bodily injury" is not supported and neither is the conclusion of domestic violence. The majority's three "guiding cases" which they cite for the proposition that Defendant-Father's actions were domestic violence all include testimony and evidence of violence that clearly differentiate them from this case: a child being "popped" in the face leaving a swollen and busted lip, *In re A.L.T.*, 241 N.C. App. 443, 449, 774 S.E.2d 316, 320 (2015); a woman testifying she was "choked" after an argument, *Rollings v. Shelton*, 286 N.C. App. 693, 694, 882 S.E.2d 70, 70 (2022); and a woman striking a man with her car causing a laceration, *Williams,* 298 N.C. App. at 617, 916 S.E.2d at 288. These cases are clearly and markedly different than a child testifying that a parent picked him up "not that hard" and placed him in a car seat without leaving a single mark. As any parent is aware, a child throwing a crying tantrum often becomes red in the face.

Different iterations of this same basic scenario play out in numerous homes and parking lots across our state daily. A young child is frustrated or upset for one reason or another and refuses to get into their car seat. A parent may give numerous verbal warnings but eventually they pick up that child and put them safely into their car seat. There may be tears, the child may become red in the face, but the child is safe, the family is able to move forward, and the child learns that some things are nonnegotiable. This is necessary parenting and clearly not domestic violence.

Based on the majority's holding, parking lots around the state will now be filled

as parents of preschoolers and young children spend hours waiting, negotiating, or bribing these children, who now hold all the power, to get into their car seats willingly because parents are no longer legally able to pick them up and place them there if they do not want to go for fear of being ripped from their lives through the issuance of a DVPO.

Allowing children to escape consequences through temper tantrums, emotional outbursts, or persistent crying has predictable and damaging consequences. When a child learns that displaying distress can shield him from accountability, the lesson learned is not obedience, responsibility, or self-control. The lesson learned is that consequences can be avoided through emotional pressure. That lesson can follow a child throughout life, shaping how he responds to authority, rules, and personal responsibility.

That is why the facts of this case are so troubling. The child refused to obey. The parent responded by enforcing the rule and placing the child in the seat where he was supposed to be. The child cried. Police became involved, a domestic violence protective order was entered, and the father was separated from his child. The practical effect was that the child's disobedience was followed by a result that removed the parent's authority and imposed serious consequences on the parent instead.

Children learn from outcomes. When disobedience is followed by correction, children learn accountability. When disobedience is followed by the punishment of

the parent, children may learn a very different lesson. Respect for authority, self-discipline, and obedience to reasonable rules are not qualities that develop on their own. They must be taught, reinforced, and consistently upheld. A society that expects children to respect the law as adults cannot simultaneously undermine parents who are attempting to instill respect for rules during childhood.

Parents have a duty to guide, correct, and discipline their children. When parental discipline is treated as wrongdoing, the authority necessary to raise responsible children is weakened. The long-term cost is borne not only by families but by society as a whole.

The rise in juvenile delinquency, disorderly conduct, and open disregard for authority did not happen by accident. Too many children are being raised without firm boundaries, meaningful consequences, or consistent correction when they misbehave. When parents allow children to do as they please and excuse disobedience, they send a dangerous message: that rules do not matter and authority does not deserve respect. The result is often seen in teenagers who defy parents, disrupt communities, and show little regard for the law. Respect for authority must be taught at home long before a child encounters teachers, employers, or law enforcement.

Corporal punishment, also known as spanking, often causes redness of the buttocks. However, when administered reasonably and for the purpose of correction rather than anger, it should not be confused with abuse, criminal conduct, or domestic

violence. "Parents have a constitutional right to raise their children as they see fit, including, in this State, using corporal punishment within certain limits." *State v. Freeman*, 295 N.C. App. 209, 221, 905 S.E.2d 764, 774 (2024). The goal is not to harm a child but to reinforce important lessons about obedience and responsibility. While the trial court may not have chosen to utilize the same discipline as Defendant-Father, it could have, at best, deemed his actions as inappropriate discipline; his parenting choice that created no bodily injury cannot meet the standard for domestic violence.

Entry of a DVPO is a serious and consequential matter that should not be taken lightly. As this Court has previously recognized, the issuance of such an order "involves both legal and non-legal collateral consequences." *Martin v. Martin*, 266 N.C. App. 296, 299, 832 S.E.2d 191, 195 (2019) (quoting *Mannise v. Harrell*, 249 N.C. App. 322, 332, 791 S.E.2d 653, 660 (2016)). Legally, not only does it "place restrictions on where a defendant may or may not be located, or what personal property a defendant may possess or use[,]" the DVPO may also be "considered by the trial court in any custody action involving the defendant." *Martin*, 266 N.C. App. at 299, 832 S.E.2d at 195 (cleaned up). Additionally, there is a "stigma" that can follow a person in non-legal situations including when "applying for a job, a professional license, a government position, admission to an academic institution, or the like[.]" *Smith v. Smith*, 145 N.C. App. 434, 437, 549 S.E.2d 912, 914 (2001) (citation and quotation marks omitted). The consequences of this DVPO extend far beyond this action.

These most significant impacts were clear in this case as the DVPO was utilized to change custody from joint custody with alternating time to sole legal and physical custody granted to the mother with Father limited to two hours of supervised visitation once a week. Notably, this change was effectuated through a short hearing in a DVPO action rather than through a full child custody hearing in the pending Chapter 50 action following a motion to modify custody.

Defendant-Father absolutely had the right to teach his seven-year-old son that tantrums about car seat safety were inappropriate and being late for school would not be tolerated, by safely and effectively moving him to his car seat without leaving a single mark on his body. This should not have resulted in Father losing custody of both children as well as the vast majority of his time with his children. Therefore, I would reverse the trial court's order.